F.D. v M.D. (2024 NY Slip Op 50482(U))

[*1]

F.D. v M.D.

2024 NY Slip Op 50482(U)

Decided on April 25, 2024

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 25, 2024
Supreme Court, Westchester County

F.D., Plaintiff,

against
M.D., Defendant.

Index No. [REDACTED]

Nicholas P. Barone, Esq. 
Counsel for the Plaintiff, F.D.
44 Church Street 
White Plains, NY 10601 
M.D.
Pro se Defendant

James L. Hyer, J.

Basic Background & Procedural History
The parties to this matter were married on [REDACTED], in [REDACTED], State of New York. Together, they have no unemancipated children and no further children are expected.
Plaintiff commenced this matrimonial action on December 6, 2023, with the filing of a Summons, Verified Complaint and ancillary documents (NYSCEF Doc. No. 1). Notably, the Verified Complaint states, in part, that:
WHEREFORE, Plaintiff demands judgment against Defendant, said judgment to grant the following relief:
(a) Divorcing the parties and dissolving the marital relationship which has heretofore existed.
(b) Awarding Plaintiff exclusive use and occupancy of the marital residence.
(c) Awarding Plaintiff exclusive use and occupancy of the contents of the marital residence.
(d) Awarding Plaintiff equitable distribution of marital property, including a distributive award to Plaintiff if required or appropriate to effect such equitable distribution.
(e) Declaring Plaintiff's separate property.
(f) Granting each party the right to resume the use of any maiden name or other pre-marriage surname.
(g) Awarding Plaintiff such other and further relief as to the court may seem just and proper, together with the costs and disbursements of this action.
On December 21, 2023, Plaintiff filed an Affidavit of Service of the Complaint on Defendant (NYSCEF Doc. No. 2).
On February 6, 2024, Plaintiff filed a Request for Judicial Intervention and Motion (hereinafter "Motion Sequence #1") seeking the entry of an Order granting relief, inter alia, the following: (1) Granting the Plaintiff a divorce and dissolving the marital relationship which as heretofore existed; (2) Scheduling an inquest to finalize the extant issues of the parties' marriage, and upon said inquest, declaring Plaintiff's separate property, and granting plaintiff equitable distribution of the marital property; and (3) Granting Plaintiff such other and further relief as this Court deems just and proper, together with the costs and disbursements of this action (NYSCEF Doc. Nos. 3-8).
On February 7, 2024, an Order was entered directing, in part that: (1) Parties and counsel are directed to appear before the Court, in person, on the return date of Motion Sequence #1, on February 27, 2024, at 9:30 a.m.; and (2) Plaintiff's counsel shall serve a copy of this Order and Motion Sequence #1 upon Defendant by overnight delivery by February 9, 2024, and shall file an Affidavit of Service with a copy of the overnight delivery tracking slip by February 9, 2024 (NYSCEF Doc. No. 9).
On February 8, 2024, Plaintiff filed an Affidavit of Service of the Order dated February 7, 2024 (NYSCEF Doc. No. 10).
On February 27, 2024, a Conference was held wherein appearances were made by Plaintiff and Plaintiff's counsel, with no appearances being made by Defendant and with Defendant having failed to request an adjournment, after which an Order was entered (NYSCEF Doc. No. 11) directing that:
(1) The Defendant is in default;
(2) An Inquest shall be held on April 18, 2024, at 11:00 a.m., at which time all of the ancillary issues arising out of the requested dissolution of the parties' marriage shall be addressed, including, but not limited to: (a) Grounds for divorce; (b) Equitable distribution of marital property; (c) Declaration of separate property; (d) Determination of claims of separate property; (e) Determination of claims of dissipation; (f) Child custody and access; (g) Child support, adult dependent support, and/or spousal support; (h) Allocation of debts; (i) Any other issues;
(3) By March 29, 2024, both parties shall serve the following Pre-Inquest disclosure to the other party by overnight delivery and provide proof of service including an Affidavit of Service and copy of the overnight tracking slip; and to file hard copies with the Court: (a) Exhibit List and copies of Exhibits for all exhibits to be utilized at the Inquest, and in the event exhibits are not included on the Exhibit List and/or copies of the Exhibits are not provided, they shall not be utilized at the Inquest; (b) Witness List for any witnesses to be called to provide testimony at the Inquest, and in the event witnesses are not [*2]disclosed they shall not be permitted to provide testimony at the Inquest;
(4) Plaintiff's counsel shall order a copy of the transcript from today's conference and shall submit same to the Court to "so order" by March 29, 2024;
(5) By March 1, 2024, Plaintiff's counsel shall serve a copy of this Order upon Defendant by overnight delivery and provide proof of service including an Affidavit of Service and copy of the overnight tracking slip.
On March 26, 2024, Plaintiff filed an Exhibit List (NYSCEF Doc. No. 15), Witness List (NYSCEF Doc. No. 19), and Affidavit of Service of same on Defendant (NYSCEF Doc. No. 20). Defendant did not file any Pre-Inquest submissions.
Inquest Testimony and Documents in Evidence
The Court held the Inquest on April 18, 2024. Plaintiff appeared with Plaintiff's counsel. Defendant did not appear. The Court did not receive any adjournment requests of the Inquest by Defendant or any representative of Defendant.
During the Inquest, sixteen (16) exhibits were admitted into evidence.
Exhibit List
1. Plaintiff's Exhibit #1 — Plaintiff's Statement of Net Worth, dated 3.21.2024
2. Plaintiff's Exhibit #2 — Plaintiff's 2023 Income Tax Returns, dated 3.13.2024
3. Plaintiff's Exhibit #3 — [REDACTED] 2023 Income Tax Return, dated 3.4.2024
4. Plaintiff's Exhibit #4 — Plaintiff's 2024 Paystubs
5. Plaintiff's Exhibit #5 — Plaintiff's Social Security Statement, dated 3.13.2024
6. Plaintiff's Exhibit #6 — Defendant's Form SSA-1099 Social Security Benefit Statement
7. Plaintiff's Exhibit #7 — Maintenance Worksheet
8. Plaintiff's Exhibit #8 — Deed, dated 11.30.1999
9. Plaintiff's Exhibit #9 — Cenular Statement, dated 2.20.2024
10. Plaintiff's Exhibit #10 — Wilton Reassurance Life Insurance Company Statement, dated 1.26.2024
11. Plaintiff's Exhibit #11 — Building Service 32 BJ Supplemental Retirement Savings Plan Account Statement, dated 12.31.2023
12. Plaintiff's Exhibit #12 — 32BJ North Pension Fund Statement, dated October 14, 2022
13. Plaintiff's Exhibit #13 - New York 529 Statement, dated 10.1.2023
14. Plaintiff's Exhibit #14 — Capital One Statement, dated 12.2023
15. Plaintiff's Exhibit #15 — Capital One Statement, dated 12.29.2023
16. Plaintiff's Exhibit #16 — Capital One Credit Card Statement, dated 12.10.2023
Plaintiff was the sole witness to testify at the Inquest.
Plaintiff's Testimony
When presented with Plaintiff's Exhibit #1, Plaintiff identified the document as his Statement of Net Worth and the document was moved into evidence. When presented with Plaintiff's Exhibit #2, he identified the document as his 2023 Income Tax Return and the document was moved into evidence. When presented with Plaintiff's Exhibit #3, he identified the document as his business Income Tax Return for [REDACTED], which was moved into evidence. When presented with Plaintiff's Exhibit #4, he identified the documents as his 2024 paystubs, which were moved into evidence. When presented with Plaintiff's Exhibit #5, he identified the document as his 2024 Social Security Statement, which was moved into evidence. When presented with Plaintiff's Exhibit #6, he identified the document as Defendant's 2023 [*3]Social Security Statement, which was moved into evidence. When presented with Plaintiff's Exhibit #7, he identified the document as a Spousal Maintenance Worksheet reflecting his correct income, which was moved into evidence. When presented with Plaintiff's Exhibit #8, he identified this as the Deed to his home, which was moved into evidence. He testified that both parties reside at this property and that he is asking that the Court direct the home to be listed and that a Receiver is appointed to sign the real estate transfer documents. He testified that he is asking that he be permitted to select a realtor and that the net proceeds be divided equally between the parties. When presented with Plaintiff's Exhibit #9, he identified this document as the mortgage statement for the property, which was moved into evidence. When presented with Plaintiff's Exhibit #10, he identified the document as a life insurance policy with a balance that he would like divided between the parties. When presented with Plaintiff's Exhibit #11, he identified this document as his retirement plan, which was moved into evidence. He testified that he agreed to split the marital portion of the retirement plan with Defendant. He further testified that there are no loans against the retirement benefit. When presented with Plaintiff's Exhibit #12, he identified this document as his pension statement, which was moved into evidence. He testified that he agreed to split the marital portion of the retirement plan with Defendant. When presented with Plaintiff's Exhibit #13, he identified this document as a 529 Account Statement for his child [REDACTED], which was moved into evidence. He testified that [REDACTED] will be attending college next year and would like to utilize the funds in this account for [REDACTED]. When presented with Plaintiff's Exhibit #14, he identified this document as his Capital One Statement for his accounts, which was moved into evidence. He testified that he agrees to split the value of these accounts as of the date of commencement with Defendant. When presented with Plaintiff's Exhibit #15, he identified this document as a statement for his Capital One Credit Card Statement, which was moved into evidence. He testified that he agreed to be solely responsible for the amount due. Plaintiff's counsel made an application that as the presumptively correct spousal maintenance amount is $2,263.00, that Plaintiff be limited to payment of spousal maintenance to Defendant of that monthly amount for a period of two to three years.
Findings of Fact & Conclusions of Law
a. Plaintiff's Request that a judgment be entered granting Plaintiff a divorce in favor of Plaintiff and against Defendant, dissolving forever the bonds of matrimony existing between Plaintiff and Defendant upon the grounds of the Irretrievable Breakdown of the Relationship pursuant to DRL 170(7).
Pursuant to New York State Domestic Relations Law § 170(7):
An action for divorce may be maintained by a husband or wife to procure a judgment divorcing the parties and dissolving the marriage on any of the following grounds:
* * *
(7) The relationship between husband and wife has broken down irretrievably for a period of at least six months, provided that one party has so stated under oath. No judgment of divorce shall be granted under this subdivision unless and until the economic issues of equitable distribution of marital property, the payment or waiver of spousal support, the payment of child support, the payment of counsel and experts' fees and [*4]expenses as well as the custody and visitation with the infant children of the marriage have been resolved by the parties, or determined by the court and incorporated into the judgment of divorce.
A spouse's statement under oath that the marriage was irretrievably broken for a period of six months is, by itself, sufficient to establish a cause of action for divorce as a matter of law (see Hoffer-Adou v Adou, 121 AD3d 618, 619 [1st Dept 2014]).
Based upon the submissions made to this Court, along with the testimony and evidence received at the Inquest, Plaintiff's request is granted to the extent that a judgment be entered granting Plaintiff a divorce in her favor and against Defendant, dissolving forever the bonds of matrimony existing between Plaintiff and Defendant upon the grounds of the Irretrievable Breakdown of the Relationship pursuant to DRL § 170(7).
b. Plaintiff's Requests Pertaining to Equitable Distribution of Marital Assets, Declaration of Separate Property and Allocation of Debts.
The Appellate Division, Second Department has noted the manner in which a trial court is to make a determination as to equitable distribution in the context of a matrimonial action:
The Equitable Distribution Law mandates that, whenever a marriage is terminated, absent an agreement of the parties, the court must determine the rights of the parties in their separate and marital property and provide for the disposition of the property in the final judgment (see Domestic Relations Law § 236[B][5][a]). In determining the equitable distribution of marital property, the court is required to consider 14 specific factors and may take into account any other factor the court finds just and proper (see Domestic Relations Law § 236[B][5][d]). The court is obligated to render a decision in which it sets forth the factors it considered and the reasons for its decision, a requirement that cannot be waived (see Domestic Relations Law § 236[B][5][g]). In the absence of express findings of fact and of a detailed discussion of the enumerated factors, meaningful appellate review is precluded and a remittal for further fact finding may be required (see Gape v. Gape, 110 AD2d 621; see also Kluge v. Kluge, 159 AD2d 968). Facts must be sufficiently developed at trial to enable a reasoned determination of the issues of equitable distribution and, if not, a new trial may be ordered (see Madu v. Madu, 135 AD3d 836, 837; McLoughlin v. McLoughlin, 74 AD3d 911, 915).
(Kaufman v Kaufman, 189 AD3d 31, 52 [2d Dept. 2020]).
The New York State Domestic Relations Law § 236[B][5] notes, in part, that:
b. Separate property shall remain such.
c. Marital property shall be distributed equitably between the parties, considering the circumstances of the case and of the respective parties.
d. In determining an equitable disposition of property under paragraph c, the court shall consider:
(1) the income and property of each party at the time of marriage, and at the time of the commencement of the action;
(2) the duration of the marriage and the age and health of both parties;
(3) the need of a custodial parent to occupy or own the marital residence and to use or own its household effects;
(4) the loss of inheritance and pension rights upon dissolution of the marriage as of the date of dissolution;
(5) the loss of health insurance benefits upon dissolution of the marriage;
(6) any award of maintenance under subdivision six of this part;
(7) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party. The court shall not consider as marital property subject to distribution the value of a spouse's enhanced earning capacity arising from a license, degree, celebrity goodwill, or career enhancement. However, in arriving at an equitable division of marital property, the court shall consider the direct or indirect contributions to the development during the marriage of the enhanced earning capacity of the other spouse;
(8) the liquid or non-liquid character of all marital property;
(9) the probable future financial circumstances of each party;
(10) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest intact and free from any claim or interference by the other party;
(11) the tax consequences to each party;
(12) the wasteful dissipation of assets by either spouse;
(13) any transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;
(14) whether either party has committed an act or acts of domestic violence, as described in subdivision one of section four hundred fifty-nine-a of the social services law, against the other party and the nature, extent, duration and impact of such act or acts;
(15) in awarding the possession of a companion animal, the court shall consider the best interest of such animal. "Companion animal", as used in this subparagraph, shall have the same meaning as in subdivision five of section three hundred fifty of the agriculture and markets law; and
(16) any other factor which the court shall expressly find to be just and proper.
e. In any action in which the court shall determine that an equitable distribution is appropriate but would be impractical or burdensome or where the distribution of an interest in a business, corporation or profession would be contrary to law, the court in lieu of such equitable distribution shall make a distributive award in order to achieve equity between the parties. The court in its discretion, also may make a distributive award to supplement, facilitate or effectuate a distribution of marital property.
f. In addition to the disposition of property as set forth above, the court may make such order regarding the use and occupancy of the marital home and its household effects as provided in section two hundred thirty-four of this chapter, without regard to the form of ownership of such property.
g. In any decision made pursuant to this subdivision, the court shall set forth the factors it considered and the reasons for its decision and such may not be waived by either party or [*5]counsel.
A statutory presumption exists that all property acquired by either spouse during the marriage, unless clearly separate, is marital property and that the party seeking to overcome the presumption has the burden of proving that the property in dispute is separate property (Nerayoff v. Rokhsar, 168 AD3d 1071 [2d Dept 2019]; see also Domestic Relations Law § 236[B][1][c])
Based upon the submissions made to this Court, along with the testimony and evidence received at the Inquest, the following assets are determined to be marital property which will be subject to equitable distribution as set forth herein:
[1] [REDACTED]
Business interests acquired during the period from the date of the marriage and date of commencement of a matrimonial action are marital property (Klein v. Klein, 296 AD2d 533 [2d Dept 2002]; Reiner v. Reiner, 100 AD2d 872 [2d Dept 1984]). New York State Domestic Relations Law ("DRL") § 236(B)(5)(d)(10) directs, "In determining an equitable disposition of property under paragraph c, the court shall consider: the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest intact and free from any claim or interference by the other party;." DRL § 236(B)(5)(e) further directs: "In any action in which the court shall determine that an equitable distribution is appropriate but would be impractical or burdensome or where the distribution of an interest in a business, corporation or profession would be contrary to law, the court in lieu of such equitable distribution shall make a distributive award in order to achieve equity between the parties. The court in its discretion, also may make a distributive award to supplement, facilitate or effectuate a distribution of marital property."
"Once property is classified as marital or separate, the trial court has broad discretion to select an appropriate date for measuring the value of [the] property" (Mesholam v. Mesholam, 11 NY3d 24 [2008]). "[t]here is no uniform rule for fixing the value of a business for the purpose of equitable distribution. Valuation is an exercise properly within the fact-finding power of the trial court, guided by expert testimony. The determination of the factfinder as to the value of a business, if within the range of the testimony presented, will be accorded deference on appeal if it rests primarily on the credibility of expert witnesses and their valuation techniques" (Wasserman v. Wasserman, 66 AD3d 880 [2d Dept 2009]). "Whatever valuation method is used 'must take into consideration inhibitions on the transfer of the corporate interest resulting from a limited market or contractual provisions' " (Nadasi v. Nadel-Nadasi, 153 AD3d 1346 [2d Dept 2017], quoting Amodio v. Amodio, 70 NY2d 5 [1987]).
While the Court has discretion as to the date when valuation of business assets must occur, either date of commencement or date of trial, that discretion must be exercised carefully to ensure that the most equitable approach is utilized (Morton v. Morton, 69 AD3d 693 [2d Dept 2010]). The non-titled spouse has the burden of identifying business assets and offering proof of value of such assets (Post v. Post, 68 AD3d 741 [2d Dept 2009]; Antoian v. Antoian, 215 AD2d 421 [2d Dept 1995]). In addition to the use of experts to provide evidence as to the value of business interests, if determined to be credible, the testimony of parties have been found sufficient to determine valuation (Kennedy v. Kennedy, 256 AD2d 1048 [3d Dept 1998]; Barnhart v. Barnhart, 148 AD3d 1264 [3d Dept 2017]). Absent other proof of the valuation of a business interest, the Court may substitute the annual earnings of such business interest to determine valuation of the asset (Griffin v. Griffin, 115 AD2d 587 [2d Dept 1985]).
Following a determination of the value of a marital business interest, the Court will then determine what equitable distribution award to the non-titled spouse is warranted taking into consideration the facts set forth pursuant to the DRL, including but not limited to, the direct and indirect contributions of the non-titled spouse to the business interest (Elias v. Elias, 101 AD3d 938 [2d Dept 2012] (Court awarded wife 25% of the value of husband's interest in company, due to wife's minimal direct and indirect involvement in the husband's company); Massirman v. Massirman, 78 AD3d 1021 [2d Dept 2010] (Court awarded wife 25% of the value of husband's interest in company, due to wife's minimal direct and indirect involvement in the husband's company). In lieu of directing that a business interest be sold, the Court may direct that the non-titled spouse be awarded a larger share of a different marital asset or a lump sum award (Ward v. Ward, 94 AD2d 908 [3d Dept 1983]; Goudreau v. Goudreau, 283 AD2d 684 [3d Dept 2001]).
In this matter, the Court was presented with Plaintiff's Statement of Net Worth, which was moved into evidence as Plaintiff's Exhibit #1 (hereinafter "Plaintiff's SNW"). Plaintiff's SNW is dated March 21, 2024, is notarized and certified by Plaintiff's counsel. Section IV(F)(8) of Plaintiff's SNW pertaining to interests in any business lists [REDACTED]as a corporation for which he owns one hundred precent interest and which he acquired on April 15, 2005 (hereinafter the "Corporation"). Notably, in the section of Plaintiff's SNW pertaining to the Corporation several key pieces of information are left blank including: (e) the original price or value, (f) source of funds to acquire and, (g) net worth of business and date of such valuation. However, Plaintiff lists as the total value of his business interests as "$0.00."
The Court was further provided with a 2023 1120-S United States Income Tax Return for an S Corporation for the Corporation including a Schedule K-1 providing Plaintiff as one hundred percent owner of all of the two hundred shares of the Corporation which was moved into evidence as Plaintiff's Exhibit #3 (hereinafter the "Corporate Tax Return"). The Corporate Tax Return provided gross receipts or sales of $90,729.00 and following deductions of $90,994.00, an ordinary business income (loss) of -$265.00.
While the Court was provided with no direct testimony as to the ownership of the Corporation or valuation thereof, Plaintiff's estimate of $0.00 value of the Corporation in Plaintiff's SNW constitutes an informal judicial admission constituting competent evidence of the date of acquisition and value (Fassett v. Fassett, 101 AD2d 604 [3d Dept 1984]). This asserted value is corroborated by the Corporate Tax Return which provides a business loss of -$265.00 for the 2023 tax year, leading the Court to accept Plaintiff's asserted valuation of the Corporation at $0.00. Accordingly, the Corporation was acquired during the marriage and the Court is not in receipt of any evidence that the Corporation is a separate asset.
Accordingly, based upon the submissions received by the Court and evidence received at the Inquest, it is hereby determined that the Corporation is a marital asset having a value of $0.00; that the Plaintiff shall receive one hundred percent title and ownership in the Corporation, and; Plaintiff shall be solely responsible for any debts and liabilities arising out of the Corporation.
[2] 2014 Land Cruiser
Section IV(D)(6) of Plaintiff's SNW lists only one vehicle being a 2014 Land Cruiser acquired in 2014, titled to Plaintiff, with a source of funds to acquire a loan, with a date of commencement valuation of $2,000.00 (hereinafter the "Car"). Notably, the Plaintiff's SNW does not provide the following: (d) original price; (f) amount of lien unpaid; and (g) fair market [*6]value. Accordingly, Plaintiff's SNW constitutes a judicial admission that the Car was purchased during the parties' marriage.
Based upon the submissions received by the Court and evidence received at the Inquest, it is hereby determined that the Car is a marital asset having an unknown value; within ten (10) days of the entry of this Decision and Order Plaintiff shall obtain the fair market value of the Car utilizing Kelly Blue Book, providing a copy of such valuation to Defendant via certified mail; within thirty (30) days of the entry of this Decision and Order Plaintiff shall list the Car for sale at the fair market value of the Car, providing proof of such listing with Defendant via certified mail; Plaintiff shall divide the net proceeds of the sale of the Car 50/50 with Defendant.
[3] Cash Surrender Value of Life Insurance
Section IV(G)(9) of Plaintiff's SNW lists only one cash surrender value of life insurance pertaining to the Wilton Reassurance Life Insurance Company of New York life insurance policy insuring the life of Plaintiff; policy number ending "[REDACTED]"; acquired on [REDACTED], 2000; with a face amount of policy of $86,523.00; having a cash surrender value as of the date of commencement of $16,533.00 (hereinafter "Policy"). Plaintiff's SNW constitutes a judicial admission that the Policy was purchased during the marriage and that the value of the Policy as of the date of commencement was $16,533.00. Plaintiff's Exhibit #10 admitted into evidence is a Policy Statement indicating that as of January 26, 2024, the Policy has a cash surrender value of $16,371.26.
Based upon the submissions received by the Court and evidence received at the Inquest, it is hereby determined that the cash surrender value of the Policy is a marital asset having a value of $16,371.26 of which Defendant is entitled to fifty percent being $8,185.51; that Plaintiff is awarded sole ownership interest in the Policy; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $8,185.51 to Defendant as and for her interest in the Policy.
[4] Retirement Plans
(a) 32BJ Supplemental Retirement Savings Plan
Section IV(C)(5) of Plaintiff's SNW discloses only one retirement account of the parties being a 32BJ Supplemental Retirement Savings Plan acquired in 1995 having a value as of the date of commencement of $2,097.00 (hereinafter "Savings Plan"). At Inquest Plaintiff's Exhibit 11 was admitted into evidence, being a Savings Plan statement providing a balance of $2,097.34, as of December 31, 2023. Accordingly, Plaintiff's SNW constitutes a judicial admission that the Retirement Plan was created during the parties' marriage.
Based upon the submissions received by the Court and evidence received at the Inquest, it is hereby determined that the Savings Plan is a marital asset having a value of $2,097.00 of which Defendant is entitled to fifty percent being $1,048.50; that Plaintiff is awarded sole ownership interest in the Savings Plan; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $1,048.50 to Defendant as and for her interest in the Savings Plan.
(b) 32BJ North Pension Fund
In addition to the one disclosed retirement account of Plaintiff in Plaintiff's SNW a second retirement account was disclosed at Inquest being Plaintiff's 32BJ North Pension Fund a statement for which was admitted into evidence as Plaintiff's Exhibit #12 (hereinafter the "Pension"). While this statement provides no information as to when the Pension originated or [*7]any valuation of the Pension, at Inquest Plaintiff testified that he sought to divide his retirement benefits with Defendant, including the Pension, with each receiving a fifty percent share.
Accordingly, based upon the submissions received by the Court and evidence received at the Inquest, it is hereby determined that the Pension is a marital asset having an unknown value of which Defendant is entitled to fifty percent pursuant to the calculation set forth in Majauskas v. Majauskas, 61 NY2d 481 [1984]); that within thirty (30) days of the entry of this Decision and Order Plaintiff and Defendant shall engage [REDACTED], to prepare a qualified domestic relations order for the Pension, the cost of which shall be payable by each party providing fifty percent.
[5] Financial Accounts (Non-529)
(a) Capital One Simply Checking Account, Account Number Ending "[REDACTED]"
(hereinafter "Account [REDACTED]")
At Inquest, Plaintiff's Exhibit 14 was admitted into evidence, being a Capital One Statement reflecting a balance for Account [REDACTED] as of December 31, 2023, of $1,811.73. Plaintiff testified that he agreed to divide this account with Defendant with each party receiving fifty percent.
Accordingly, based upon the submissions received by the Court and evidence received at the Inquest, it is hereby determined that the Account [REDACTED] is a marital asset having a value of $1,811.73 of which Defendant is entitled to fifty percent being $905.86; that subject to the award to Defendant set forth herein Plaintiff is awarded sole ownership interest in the Account [REDACTED]; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $905.86 to Defendant as and for her interest in Account [REDACTED].
(b) Capital One Money Account, Account Number Ending "[REDACTED]"
(hereinafter "Account [REDACTED]")
At Inquest, Plaintiff's Exhibit 14 was admitted into evidence, being a Capital One Statement reflecting a balance for Account [REDACTED] as of December 31, 2023, of $1,811.73. Plaintiff testified that he agreed to divide this account 50/50 with Defendant with each party receiving fifty percent.
Accordingly, based upon the submissions received by the Court and evidence received at the Inquest, it is hereby determined that the Account [REDACTED] is a marital asset having a value of $1,824.46 of which Defendant is entitled to fifty percent being $912.23; that subject to the award to Defendant set forth herein Plaintiff is awarded sole ownership interest in the Account [REDACTED]; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $912.23 to Defendant as and for her interest in Account [REDACTED].
(c) Capital One 360 Performance Savings Account, Account Number Ending "[REDACTED]"
(hereinafter "Account [REDACTED]")
At Inquest, Plaintiff's Exhibit 14 was admitted into evidence, being a Capital One Statement reflecting a balance for Account [REDACTED] as of December 31, 2023, of $583.36. Plaintiff testified that he agreed to divide this account with Defendant with each party receiving fifty percent.
Accordingly, based upon the submissions received by the Court and evidence received at [*8]the Inquest, it is hereby determined that the Account [REDACTED] is a marital asset having a value of $583.36 of which Defendant is entitled to fifty percent being $291.68; that subject to the award to Defendant set forth herein Plaintiff is awarded sole ownership interest in the Account [REDACTED]; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $291.68 to Defendant as and for her interest in Account [REDACTED].
(d) Capital One Cash Deposit, Account Number Ending "[REDACTED]"
(hereinafter "Account [REDACTED]")
At Inquest, Plaintiff's Exhibit 14 was admitted into evidence, being a Capital One Statement reflecting a balance for Account [REDACTED] as of December 31, 2023, of $20,826.69. Plaintiff testified that he agreed to divide this account 50/50 with Defendant with each party receiving fifty percent.
Accordingly, based upon the submissions received by the Court and evidence received at the Inquest, it is hereby determined that the Account [REDACTED] is a marital asset having a value of $20,826.69 of which Defendant is entitled to fifty percent being $10,413.34; that subject to the award to Defendant set forth herein Plaintiff is awarded sole ownership interest in the Account [REDACTED]; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $10,413.34 to Defendant as and for her interest in Account [REDACTED].
(e) Capital One Cash Deposit, Account Number Ending "[REDACTED]"
(hereinafter "Account [REDACTED]")
At Inquest, Plaintiff's Exhibit 14 was admitted into evidence, being a Capital One Statement reflecting a balance for Account [REDACTED] as of December 31, 2023, of $71,282.97. Plaintiff testified that he agreed to divide this account with Defendant with each party receiving fifty percent.
Accordingly, based upon the submissions received by the Court and evidence received at the Inquest, it is hereby determined that the Account [REDACTED] is a marital asset having a value of $71,282.97 of which Defendant is entitled to fifty percent being $35,641.48; that subject to the award to Defendant set forth herein Plaintiff is awarded sole ownership interest in the Account [REDACTED]; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $35,641.48 to Defendant as and for her interest in Account [REDACTED].
(f) Capital One Business Account, Account Number Ending [REDACTED]
(hereinafter "Account [REDACTED]")
At Inquest, Plaintiff's Exhibit 14 was admitted into evidence, being a Capital One Statement reflecting a balance for Account [REDACTED] as of December 31, 2023, of $200.77. Plaintiff testified that he agreed to divide this account with Defendant with each party receiving fifty percent.
Accordingly, based upon the submissions received by the Court and evidence received at the Inquest, it is hereby determined that the Account [REDACTED] is a marital asset having a value of $200.77 of which Defendant is entitled to fifty percent being $100.38; that subject to the award to Defendant set forth herein Plaintiff is awarded sole ownership interest in the Account [REDACTED]; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $100.38 to Defendant as and for her interest in Account [REDACTED].
[6] New York 529 Advisor Guided College Savings Program Account,
Account Ending [REDACTED]
(hereinafter "529 Account")
In the context of a matrimonial action wherein the parties have established 529 accounts for the education of the parties' children it is appropriate for the Court to direct that one party be left in control of such accounts, providing copies of the statements for such accounts to the other parent, and distributing the account funds only for the benefit of the parties' child (A.C. v. J.O., 40 Misc 3d 1236(A) [Sup. Ct., Kings 2013]).
At Inquest Plaintiff's Exhibit #13 was admitted into evidence being a statement for a New York 529 Advisor Guided College Savings Program Account (hereinafter the "529 Account") in the name of Plaintiff for the benefit of the parties' son [REDACTED] (DOB: [REDACTED]) (hereinafter the "Child"), reflecting a balance of $38,673.24, as of December 31, 2023. Plaintiff testified that he sought for the funds in the 529 Account to remain in the account to be distributed only for the education expenses of [REDACTED]
Accordingly, based upon the submissions received by the Court and evidence received at the Inquest, it is hereby determined that the 529 Account shall remain in the name of Plaintiff, to be held for the benefit of [REDACTED]; Plaintiff shall send statements for the 529 Account to Defendant upon receipt via certified mail or e-mail; Plaintiff shall withdraw funds from the 529 Account only for the purpose of paying the college or vocational expenses of [REDACTED], including: (1) application fees; (2) tuition; (3) room; (4) board; (5) school books and supplies; and (6) laboratory fees.
[7] [REDACTED], New York
Section IV(B)(4) of Plaintiff's Statement of Net Worth provides one parcel of real estate of the parties owned jointly being acquired on [REDACTED], 1999, encumbered by a mortgage with a payoff amount of $53,819.00. Accordingly, Plaintiff's SNW constitutes a judicial admission that the property was purchased during the parties' marriage.
At Inquest, the Court Plaintiff's Exhibit #8 was admitted into evidence for the real property known as [REDACTED], New York (hereinafter the "Marital Domicile"); dated [REDACTED], 1999; listing the parties as grantees as tenants by the entirety (hereinafter the "Deed"). The Deed includes a recording page from the Westchester County Clerk's Office reflecting Control Number [REDACTED]; recording date of [REDACTED], 2000; and consideration of $270,000.00.
Also admitted into evidence at Inquest was Plaintiff's Exhibit #9 being a Cenlar Mortgage Statement, dated February 20, 2024, Account Number Ending [REDACTED], listing the outstanding principal as $53,818.70, and the subject property for which the mortgage is related the Marital Domicile (hereinafter the "Mortgage").
The Court was not presented with any payoff statement reflecting the amount needed to satisfy the Mortgage at time of Inquest or any appraisal report reflecting the fair market value of the Marital Domicile at the time of the Inquest, and therefore is unable to determine the net equity in the Marital Domicile for purposes of determining an distributive award (Donovan v. Szlepcsik, 52 AD3d 563 [2d Dept 2008]).
At Inquest Plaintiff testified that he sought for the Marital Domicile to be listed for sale, sold and the net proceeds divided equally between the parties.
Accordingly, based upon the submissions received by the Court and evidence received at the Inquest, it is hereby determined that the Marital Domicile is a marital asset to be distributed in the following manner:
(a) Valuation — The Marital Domicile fair market value shall be determined by an appraisal report to be prepared by a New York State Licensed Real Estate Appraiser from the Part 36 List being: [REDACTED]
(b) Listing — The Marital Domicile shall be listed for sale within sixty (60) days from the date of this Decision and Order at the fair market value set forth in the Appraisal Report, by a New York State Licensed Real Estate Broker from the Part 36 List being: [REDACTED]
(c) Carrying Costs - Plaintiff and Defendant shall be equally responsible for all carrying costs associated with the Marital Domicile, including, but not limited to, mortgage payments, real estate taxes and property insurance, utilities, snow removal, landscaping, and regular repairs and maintenance. The parties shall cooperate with the Receiver to provide funds for the payment of these expenses and to the extent one party provides funds beyond their respective 50% share of these carrying costs, that party shall be provided reimbursement at closing. (d) Maintenance — The parties shall ensure that the interior and exterior of the Marital Domicile is kept clean; signage is placed on the property listing the property for sale to the extent same is permitted by any homeowner association and/or local ordinances; and that a lock box be placed on the property.
(e) Transfer - The parties shall cooperate with the Receiver in the marketing and transfer of the Marital Domicile, including, but not limited to: [1] executing any transfer documents; and [2] appearing at a closing.
(f) Distribution of Sale Proceeds — The proceeds received from the sale shall be distributed in the following manner and order:
i. Payoff of any mortgages and/or equity lines of credit which encumber the property;
ii. Payoff of any other liens which encumber the property;
iii. Payment of any usual and ordinary transfer expenses (including, but not limited to: title fees, real estate transfer taxes, real estate broker commissions, and real estate attorneys' fees);
iv. Payment of any remaining net proceeds to the parties in the following manner: Plaintiff fifty percent (50%) and Defendant fifty percent (50%), the amounts of which shall offset any distribution payable to Plaintiff to the extent that any obligations of Plaintiff to Defendant exist arising out of this Decision and Order, regardless of if they have been reduced to a money judgment or not.
Based upon the submissions made to this Court, along with the testimony and evidence received at the Inquest, the following debts are determined to be marital debts which will be subject to equitable distribution as set forth herein:
[1] Mortgage —
For which the marital domicile is encumbered is, as noted above, a marital debt to be satisfied from the net proceeds of the Marital Domicile and to the extent the net proceeds are insufficient to satisfy the Mortgage, both parties shall be responsible for fifty percent of any shortfall.
[2] Capital One Credit Card Account, Account Number Ending [REDACTED]—
At Inquest, Plaintiff's Exhibit #16 was admitted into evidence being a Capital One Credit Card Account, Account Number Ending [REDACTED] Statement, listing Plaintiff as the account holder, reflecting a balance of $8,049.32, and reflecting a Rewards Balance of [*9]$3,016.35, leaving a net balance of $5,032.97 (hereinafter the "Credit Card"). At Inquest Plaintiff testified that he was agreeable to being solely responsible for the debt arising out of the Credit Card.
Based upon the submissions made to this Court, along with the testimony and evidence received at the Inquest, Plaintiff shall be solely responsible for all debt arising out of the Credit Card.
c. Plaintiff's Request For the Appointment of a Receiver.
A Court may appoint a receiver pursuant to New York State Civil Practice Law and Rules § 6401, which provides:
(a) Appointment of temporary receiver; joinder of moving party. Upon motion of a person having an apparent interest in property which is the subject of an action in the supreme or a county court, a temporary receiver of the property may be appointed, before or after service of summons and at any time prior to judgment, or during the pendency of an appeal, where there is danger that the property will be removed from the state, or lost, materially injured or destroyed. A motion made by a person not already a party to the action constitutes an appearance in the action and the person shall be joined as a party.
(b) Powers of temporary receiver. The court appointing a receiver may authorize him to take and hold real and personal property, and sue for, collect and sell debts or claims, upon such conditions and for such purposes as the court shall direct. A receiver shall have no power to employ counsel unless expressly so authorized by order of the court. Upon motion of the receiver or a party, powers granted to a temporary receiver may be extended or limited or the receivership may be extended to another action involving the property.
(c) Duration of temporary receivership. A temporary receivership shall not continue after final judgment unless otherwise directed by the court.
"Although the appointment of a temporary receiver is an extreme remedy, which should not be lightly granted," sufficient evidence to support such an appointment will exist when there is evidence of a party's inability, or refusal, to meet the party's financial obligations promptly to the extent that marital property is in danger of being dissipated (Hildenbiddle v Hildenbiddle, 110 AD2d 819, 820 [2d Dept 1985]). Appointment of a temporary receiver can only be invoked in cases in which the moving party has made a clear evidentiary showing of the necessity for conservation of the property and protection of the interests of the movant (Hoffman v. Hoffman, 81 AD3d 601 [2d Dept 2011]). Where a party's conduct requires a receiver's appointment, that party may be required to pay all of the receiver's fees (Somer v. Somer, 155 AD2d 591, 596-597 [2d Dept 1989]; Wagenmann v. Wagenmann, 96 AD2d 534 [2d Dept 1983]).
Here, the Court is faced with a procedural history which reflects Defendant having been served with the underlying pleadings and Order scheduling Inquest, and has defaulted through her continued failure to appear. The Court is concerned Defendant's recalcitrant posture in this action will continue with an utter disregard for this action, and her obligations arising from this Decision and the eventual Judgment of Divorce will place the Marital Domicile in danger of dissipation through delay in the marketing and sale, as ordered herein.
Based upon the submissions made to this Court, along with the testimony and evidence received at the trial, Plaintiff's request is granted to the extent that a separate Order of Appointment of [*10]Receiver shall be entered by the Court simultaneously with this Decision and Order that will provide the following:
1. Plaintiff, being appointed to act as Court-appointed Receiver, without compensation, whose appointment shall remain in effect until such time as he shall submit to this Court an Affidavit setting forth the services completed as Receiver, that all services have been completed, and requesting that this Court enter an Order terminating his appointment;
2. Providing a scope of authority of the Receiver to include the following:
a. With respect to the Marital Domicile:
i. Engaging in efforts to prepare the Marital Domicile for sale, including, but not limited to, completing any renovations and repairs;
ii. Engaging in efforts to list the Properties for sale, including, but not limited to, executing any listing agreements and real estate broker agency disclosures;
iii. Engaging in any efforts to transfer and covey title, including, but not limited to, deeds and transfer documents;
iv. Distributing the funds from the sale of the Properties as set forth herein. 3. Authorizing the Receiver to file, on notice of settlement to the parties and their counsel, proposed Orders enlarging Receiver's scope of authority to address new issues that may arise following this Decision and Order.
4. The Receiver is expressly not permitted to remove Defendant from the Marital Domicile or engage in any other conduct that impairs Defendant's occupancy, use and enjoyment of the Marital Domicile.
d. Plaintiff's Request as to Child Support.
The Appellate Division, Second Department has detailed the manner in which child support payments are to be calculated:
The Child Support Standards Act " 'sets forth a formula for calculating child support by applying a designated statutory percentage, based upon the number of children to be supported, to combined parental income up to a particular ceiling' " (Matter of Peddycoart v. MacKay, 145 AD3d 1081, 1083, quoting Matter of Freeman v. Freeman, 71 AD3d 1143, 1144). "Where ... the combined parental income exceeds the statutory cap, in fixing the basic child support obligation on income over the cap, the court has the discretion to apply the factors set forth in Family Court Act § 413(1)(f), or to apply the statutory percentages, or to apply both" (Matter of Good v. Ricardo, 189 AD3d 830, 831, citing Family Ct Act § 413[1][c][3]; see Matter of Giraldo v. Fernandez, 199 AD3d 796, 798—799; Matter of Calta v. Hoagland, 167 AD3d 598). "However, the Family Court must articulate an explanation of the basis for its calculation of child support based on parental income in excess of the statutory cap" (Matter of Peddycoart v. MacKay, 145 AD3d at 1084; see Matter of Keith v. Lawrence, 113 AD3d 615, 616). "This articulation should reflect 'a careful consideration of the stated basis for its exercise of discretion, the parties' circumstances, and its reasoning why there [should or] should not be a departure from the prescribed percentage' " (Matter of Peddycoart v. MacKay, 145 AD3d at 1084, quoting McCoy v. McCoy, 107 AD3d 857, 858; see Matter of Good v. Ricardo, 189 AD3d at 831—832).
See, Butta v. Realbuto, 185 N.Y.S.3d 785 [2d Dept. 2023].
The Court may award statutory add-ons pursuant to a pro rata allocation pursuant to the Child Support Standards Act. See, McNair v. Fenyn, 954 N.Y.S.2d 197, [2d Dept. 2012]; See Also, L.P. v. C.B., 20 N.Y.S3d 292, [Kings Sup. Ct. 2015]. It is settled law that "educational expenses may be awarded where warranted by the best interests of the children and 'as justice requires', upon a showing of 'special circumstances' " Donna E.F. v. Anthony S.F., 2007 NY Misc. LEXIS 6383, citing Fruchter v. Fruchter, 288 AD2d 942, 943 [4th Dept 2001] [internal citations omitted].
A party may waive child support payments if such waiver is voluntary relinquishment of such support. See Tartufo v. Tartufo, 958 N.Y.S.2d 202 [3d Dept. 2013].
During the Inquest Plaintiff did not seek an award of child support for [REDACTED] who is almost twenty-one years of age.
Based upon the submissions made to this Court, along with the testimony and evidence received at the trial, neither party shall be entitled to receive child support from the other with the understanding that either party may seek a child support award in the future to the extent they wish to do so.
e. Plaintiff's Request as to Spousal Support and Maintenance.
This Court notes that Plaintiff's testimony and application during the Inquest was that she be permitted to waive spousal support and that she should not be required to provide spousal support to Defendant.
New York State Domestic Relations Law sets forth the manner in which spousal maintenance and support shall be calculated and the duration determined by the Court (Emmanuel D. v. Ximena D., 154 N.Y.S.3d 216, [Kings Sup. Ct. 2021]). It is appropriate for a Court to require a spouse obligated to provide spousal maintenance to the other to maintain life insurance in the payee spouse's favor to secure the maintenance obligation (Charles v. Charles, 53 AD3d 468, [2d Dept 2008]).
In calculating post-divorce spousal support, a trial Court must consider the fifteen factors set forth in DRL § 236B(6)(E)(1):
1. the age and health of the parties;
2. the present or future earning capacity of the parties, including a history of limited participation in the workforce;
3. the need of one party to incur education or training expenses;
4. the termination of a child support award before the termination of the maintenance award when the calculation of maintenance was based upon child support being awarded which resulted in a maintenance award lower than it would have been had child support not been awarded;
5. the wasteful dissipation of marital property, including transfers or encumbrances made in contemplation of a matrimonial action without fair consideration;
6. the existence and duration of a pre-marital joint household or a pre-divorce separate household;
7. acts by one party against another that have inhibited or continue to inhibit a party's earning capacity or ability to obtain meaningful employment. Such acts include but are not limited to acts of domestic violence as provided in section four hundred fifty-nine-a [*11]of the social services law;
8. the availability and cost of medical insurance for the parties;
9. the care of children or stepchildren, disabled adult children or stepchildren, elderly parents or in-laws provided during the marriage that inhibits a party's earning capacity;
10. the tax consequences to each party;
11. the standard of living of the parties established during the marriage;
12. the reduced or lost earning capacity of the payee as a result of having foregone or delayed education, training, employment or career opportunities during the marriage;
13. the equitable distribution of marital property and the income or imputed income on the assets so distributed;
14. the contributions and services of the payee as a spouse, parent, wage earner andhomemaker and to the career or career potential of the other party; and
15. any other factor which the court shall expressly find to be just and proper.
When determining the duration of any spousal maintenance awarded, the Court is to consider the following advisory schedule:

Length of Marriage

Percent of the length of the marriage for which maintenance will be payable

0 up to and including 15 years

15% - 30%

More than 15 up to and including 20 years

30% - 40%

More than 20 years

35% - 50%

At the Inquest the 2023 Income Tax Return filed jointly by the parties was admitted into evidence as Plaintiff's Exhibit #2; Plaintiff's 2024 Paystubs were admitted into evidence as Plaintiff's Exhibit #4; Defendant's Social Security Statement was admitted into evidence as Plaintiff's Exhibit #6; and Plaintiff's Social Security Statement was admitted into evidence as Plaintiff's Exhibit #7. At Inquest, Plaintiff's Exhibit #7 was admitted into evidence being a Spousal Maintenance Worksheet reflecting the following calculation:

Plaintiff

Defendant

Combined

Gross Income from Tax Return

$104,980.00

$11,111.00

$116,091.00

Total Income from Tax Return

$104,980.00

$11,111.00

$116,091.00

Statutory Deductions

$8,031.00

$850.00

$8,881.00

[*12]Net Statutory Income

$96,946.00

$10,261.00

$107,210.00

Calculation #1:

Payor's Income (up to $228,000.00) x 30%

=

$29,085.00

Payee's Income x 20%

=

$2,052.00

Difference

=

$27,032.00

Result of Calculation #1

=

$27,032.00

Calculation #2:

Total Income

=

$107,210.00

X40%

=

$42,884.00

Less Payee's Income

=

$10,261.00

Result of Calculation #2

=

$32,623.00

Presumptive Spousal Support (Lower of both Calculations)

$27,032.00/Annually

$2,253.00/Monthly

Accordingly, the presumptively correct spousal support amount is $27,032.00 annually or $2,253.00 monthly.
Further as the Plaintiff's Verified Complaint and Plaintiff's SNW both provided the parties' date of marriage as May 26, 1979, as of the date of commencement of this action on December 6, 2023, the parties were married for 44 years and 6 months (534 months). Accordingly, the presumptive duration of spousal support would range from 35% or 187 months to 50% or 267 months.
Based upon the long duration of the parties' marriage, the limited equitable distribution to be received by Defendant, the lack of any evidence of any separate property of Defendant and the significant income disparity between the parties, the Court determines that Plaintiff shall provide spousal maintenance to Defendant in the amount of $2,253.00 monthly, for a duration of 187 months, payable on the first (1st) day of each month, commencing on May 1, 2024.
It is further directed that Plaintiff shall obtain and maintain a term or whole life insurance policy to secure Plaintiff's spousal maintenance obligations to Defendant, naming Defendant as beneficiary, for a face amount of $421,311.00 which shall be reduced annually to the then [*13]amount remaining owing from Plaintiff to Defendant arising out of this provision. To effectuate this provision Plaintiff shall within thirty (30) days of this Decision and Order: (1) file a Declarations Policy and proof of payment of premium of a life insurance policy as required herein; (2) provide Defendant with an Authorization permitting her to obtain information pertaining to the life insurance policy, including but not limited to, premium notices; and (3) directing that the life insurance provider forward to Defendant duplicate copies of any premium notices or other correspondence pertaining to the life insurance policy. 
f. Plaintiff's Request That Pursuant to DRL § 240-a, Either Party Be Authorized To Resume The Use of a Pre-Marriage Name.
In the context of a matrimonial action, trial courts have the authority to grant parties the request to resume the use of prior pre-marriage names.
Based upon the submissions made to this Court, along with the testimony and evidence received at the Inquest, both parties may resume the use of any pre-marriage sur-names.
* * *
The Court has considered the additional contentions raised by the parties and finds them to be without merit. All claims for relief not specifically addressed herein are denied.
Based upon the foregoing, it is hereby
ORDERED that Plaintiff is granted a Judgment of Divorce against Defendant, dissolving forever the bonds of matrimony existing between Plaintiff and Defendant upon the grounds of the Irretrievable Breakdown of the Relationship pursuant to DRL § 170(7); and it is further
ORDERED that [REDACTED] is a marital asset having a value of $0.00; that the Plaintiff shall receive one hundred percent title and ownership in the Corporation, and; Plaintiff shall be solely responsible for any debts and liabilities arising out of the Corporation; and it is further
ORDERED that the 2014 Land Cruiser is a marital asset having an unknown value; within ten (10) days of the entry of this Decision and Order Plaintiff shall obtain the fair market value of the Car utilizing Kelly Blue Book, providing a copy of such valuation to Defendant via certified mail; within thirty (30) days of the entry of this Decision and Order Plaintiff shall list the Car for sale at the fair market value of the Car, providing proof of such listing with Defendant via certified mail; Plaintiff shall divide the net proceeds of the sale of the Car 50/50 with Defendant; and it is further
ORDERED that the cash surrender value of the Wilton Reassurance Life Insurance Company of New York life insurance policy insuring the life of Plaintiff; policy number ending [REDACTED]; is a marital asset having a value of $16,371.26 of which Defendant is entitled to fifty percent being $8,185.51; that Plaintiff is awarded sole ownership interest in the Policy; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $8,185.51 to Defendant as and for her interest in the Policy; and it is further
ORDERED that the 32BJ Supplemental Retirement Savings Plan is a marital asset having a value of $2,097.00 of which Defendant is entitled to fifty percent being $1,048.50; that Plaintiff is awarded sole ownership interest in the Savings Plan; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $1,048.50 to Defendant as and for her interest in the Savings Plan; and it is further
ORDERED that the 32BJ North Pension Fund Pension is a marital asset having an [*14]unknown value of which Defendant is entitled to fifty percent pursuant to the calculation set forth in Majauskas v. Majauskas, 61 NY2d 481 [1984]); that within thirty (30) days of the entry of this Decision and Order Plaintiff and Defendant shall engage [REDACTED], to prepare a qualified domestic relations order for the Pension, the cost of which shall be payable by each party providing fifty percent; and it is further
ORDERED that the Capital One Simply Checking Account, Account Number Ending [REDACTED] is a marital asset having a value of $1,811.73 of which Defendant is entitled to fifty percent being $905.86; that subject to the award to Defendant set forth herein Plaintiff is awarded sole ownership interest in the Account [REDACTED]; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $905.86 to Defendant as and for her interest in Account [REDACTED]; and it is further
ORDERED that the Capital One Money Account, Account Number Ending [REDACTED] is a marital asset having a value of $1,824.46 of which Defendant is entitled to fifty percent being $912.23; that subject to the award to Defendant set forth herein Plaintiff is awarded sole ownership interest in the Account [REDACTED]; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $912.23 to Defendant as and for her interest in Account [REDACTED]; and it is further
ORDERED that the Capital One 360 Performance Savings Account, Account Number Ending [REDACTED] is a marital asset having a value of $583.36 of which Defendant is entitled to fifty percent being $291.68; that subject to the award to Defendant set forth herein Plaintiff is awarded sole ownership interest in the Account [REDACTED]; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $291.68 to Defendant as and for her interest in Account [REDACTED]; and it is further
ORDERED that the Capital One Cash Deposit, Account Number Ending [REDACTED] is a marital asset having a value of $20,826.69 of which Defendant is entitled to fifty percent being $10,413.34; that subject to the award to Defendant set forth herein Plaintiff is awarded sole ownership interest in the Account [REDACTED]; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $10,413.34 to Defendant as and for her interest in Account [REDACTED]; and it is further
ORDERED that the Capital One Cash Deposit, Account Number Ending [REDACTED] is a marital asset having a value of $71,282.97 of which Defendant is entitled to fifty percent being $35,641.48; that subject to the award to Defendant set forth herein Plaintiff is awarded sole ownership interest in the Account [REDACTED]; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $35,641.48 to Defendant as and for her interest in Account [REDACTED]; and it is further
ORDERED that the Capital One Business Account, Account Number Ending [REDACTED] is a marital asset having a value of $200.77 of which Defendant is entitled to fifty percent being $100.38; that subject to the award to Defendant set forth herein Plaintiff is awarded sole ownership interest in the Account [REDACTED]; that within thirty (30) days of the entry of this Decision and Order Plaintiff shall provide $100.38 to Defendant as and for her interest in Account [REDACTED]; and it is further
ORDERED that the New York 529 Advisor Guided College Savings Program Account, Account Ending [REDACTED] shall remain in the name of Plaintiff, to be held for the benefit of [REDACTED]; Plaintiff shall send statements for the 529 Account to Defendant upon receipt via certified mail or e-mail; Plaintiff shall withdraw funds from the 529 Account only for the [*15]purpose of paying the college or vocational expenses of [REDACTED], including: (1) application fees; (2) tuition; (3) room; (4) board; (5) school books and supplies; and (6) laboratory fees; and it is further
ORDERED that the marital domicile located at [REDACTED], New York is a marital asset to be distributed in the following manner:
(a) Valuation — The Marital Domicile fair market value shall be determined by an appraisal report to be prepared by a New York State Licensed Real Estate Appraiser from the Part 36 List being: [REDACTED]; and
(b) Listing — The Marital Domicile shall be listed for sale within sixty (60) days from the date of this Decision and Order at the fair market value set forth in the Appraisal Report, by a New York State Licensed Real Estate Broker from the Part 36 List being: [REDACTED]; and
(c) Carrying Costs - Plaintiff and Defendant shall be equally responsible for all carrying costs associated with the Marital Domicile, including, but not limited to, mortgage payments, real estate taxes and property insurance, utilities, snow removal, landscaping, and regular repairs and maintenance. The parties shall cooperate with the Receiver to provide funds for the payment of these expenses and to the extent one party provides funds beyond their respective 50% share of these carrying costs, that party shall be provided reimbursement at closing.; and
(d) Maintenance — The parties shall ensure that the interior and exterior of the Marital Domicile is kept clean; signage is placed on the property listing the property for sale to the extent same is permitted by any homeowner association and/or local ordinances; and that a lock box be placed on the property; and
(e) Transfer - The parties shall cooperate with the Receiver in the marketing and transfer of the Marital Domicile, including, but not limited to: [1] executing any transfer documents; and [2] appearing at a closing; and
(f) Distribution of Sale Proceeds — The proceeds received from the sale shall be distributed in the following manner and order: i. Payoff of any mortgages and/or equity lines of credit which encumber the property; ii. Payoff of any other liens which encumber the property; iii. Payment of any usual and ordinary transfer expenses (including, but not limited to: title fees, real estate transfer taxes, real estate broker commissions, and real estate attorneys' fees); iv. Payment of any remaining net proceeds to the parties in the following manner: Plaintiff fifty percent (50%) and Defendant fifty percent (50%), the amounts of which shall offset any distribution payable to Plaintiff to the extent that any obligations of Plaintiff to Defendant exist arising out of this Decision and Order, regardless of if they have been reduced to a money judgment or not; and it is further
ORDERED that the Mortgage for which Marital Domicile is encumbered is, as noted above, a marital debt to be satisfied from the net proceeds of the Marital Domicile and to the extent the net proceeds are insufficient to satisfy the Mortgage, both parties shall be responsible for fifty percent of any shortfall; and it is further
ORDERED that Plaintiff shall be solely responsible for all debt arising out of the Capital One Credit Card Account, Account Number Ending [REDACTED]; and it is further
ORDERED that a separate Order of Appointment of Receiver shall be entered by the Court simultaneously with this Decision and Order that will provide the following:
1. Plaintiff, being appointed to act as Court-appointed Receiver, without compensation, whose appointment shall remain in effect until such time as he shall submit to this Court an Affidavit setting forth the services completed as Receiver, that all services have been completed, and requesting that this Court enter an Order terminating his appointment; and
2. Providing a scope of authority of the Receiver to include the following with respect to the Marital Domicile: i. Engaging in efforts to prepare the Marital Domicile for sale, including, but not limited to, completing any renovations and repairs; ii. Engaging in efforts to list the Properties for sale, including, but not limited to, executing any listing agreements and real estate broker agency disclosures; iii. Engaging in any efforts to transfer and covey title, including, but not limited to, deeds and transfer documents; iv. Distributing the funds from the sale of the Properties as set forth herein; and 3. Authorizing the Receiver to file, on notice of settlement to the parties and their counsel, proposed Orders enlarging Receiver's scope of authority to address new issues that may arise following this Decision and Order; and
4. he Receiver is expressly not permitted to remove Defendant from the Marital Domicile or engage in any other conduct that impairs Defendant's occupancy, use and enjoyment of the Marital Domicile; and it is further
ORDERED that pertaining to the parties' minor child [REDACTED], date of birth [REDACTED], neither party shall be entitled to receive child support from the other with the understanding that either party may seek a child support award in the future to the extent they wish to do so; and it is further
ORDERED that Plaintiff shall provide spousal maintenance to Defendant in the amount of $2,253.00 monthly, for a duration of 187 months, payable on the first (1st) day of each month, commencing on May 1, 2024; and it is further
ORDERED that Plaintiff shall obtain and maintain a term or whole life insurance policy to secure Plaintiff's spousal maintenance obligations to Defendant, naming Defendant as beneficiary, for a face amount of $421,311.00 which shall be reduced annually to the then amount remaining owing from Plaintiff to Defendant arising out of this provision. To effectuate this provision Plaintiff shall within thirty (30) days of this Decision and Order: (1) file a Declarations Policy and proof of payment of premium of a life insurance policy as required herein; (2) provide Defendant with an Authorization permitting her to obtain information pertaining to the life insurance policy, including but not limited to, premium notices; and (3) directing that the life insurance provider forward to Defendant duplicate copies of any premium notices or other correspondence pertaining to the life insurance policy; and it is further
ORDERED that both parties may resume the use of any pre-marriage sur-names; and it is further
ORDERED that Plaintiff shall serve this Decision and Order with Notice of Entry on Defendant within twenty (20) days of the date of this Decision and Order, and shall file an Affidavit of Service within twenty (20) days of the date of this Decision and Order; and it is further
ORDERED that to the extent any relief sought has not been granted, it is expressly denied.
The foregoing constitutes the Decision and Order of the Court. 
White Plains, New York
Dated: April 25, 2024
HON. JAMES L. HYER, J.S.C.